UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 12-80264-CIV-MARRA/BRANNON

DAVID RAMNARINE,

    Plaintiff,

vs.

R G GROUP, INC.,

    Defendant.

_____/

## REPLY MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO STRIKE DEFENDANT R G GROUP, INC.'S SECOND THROUGH SIXTEENTH AFFIRMATIVE DEFENSES TO PLAINTIFF'S COMPLAINT AND MOTION TO STRIKE RG GROUP, INC.'S DEMAND FOR ATTORNEYS' FEES

Plaintiff, David Ramnarine, by and through his undersigned counsel, files his Reply Memorandum in support of his Motion To Strike Defendant RG Group, Inc.'s Second through Sixteenth Affirmative Defenses and Motion To Strike Its Demand For Attorneys' Fees, and in support thereof states as follows:

### INTRODUCTION

Defendant has conceded that its Third, Fourth, Fourteenth, Fifteenth and Sixteenth Affirmative Defenses should be stricken. See Defendant's Response Brief (D.E. #12).

### DEFENDANT'S SECOND AFFIRMATIVE DEFENSE

Defendant alleged as its Second Affirmative Defense that "the Plaintiff failed to mitigate damages by failing to request any needed accommodation prior to filing suit. RG Group at all times material has been willing to voluntarily accommodate the Plaintiff."

Plaintiff moved to strike this defense since notice and administrative exhaustion defenses such as Defendant's Second Affirmative Defense do not apply to Title III ADA claims; that a plaintiff claiming discrimination under Title III need not prove actual discriminatory intent or

bad faith in order to make out a prima facie case of discrimination and that Defendant's professed willingness, but failure, to do what the law required it to do since 1993 is of no relevance to Plaintiff's claims and does not avoid or justify its failure to cause its restaurant building and adjoining walkways and parking areas to comply with the ADA.

In its Response Brief (D.E. #12, page 3), Defendant conceded that its Third and Fourth Affirmative Defenses, which essentially mimic the Second Affirmative Defense, should be stricken.

However, despite the clarity of the law not requiring an ADA plaintiff to provide pre-suit notice to a defendant or to exhaust any administrative process prior to filing a lawsuit seeking to enforce his or her rights under the ADA and Defendant's concession that its Third and Fourth Affirmative Defenses alleging its voluntary willingness to remedy ADA violations to the extent they are readily achievable should be stricken, why Defendant insists on maintaining its Second Affirmative Defense, which is virtually identical to its Third and Fourth Affirmative Defenses is confounding. Plain and simple: a Defendant's professed willingness, but failure, to do what the law required it to do since 1993 is of no relevance to Plaintiff's claims and does not avoid or justify its failure to cause its restaurant building and adjoining walkways and parking areas to comply with the ADA. Defendant does not cite to any authority, nor does it assert any argument to the contrary in support of this defense. As a result, it should be stricken, just like Defendant concedes its Third and Fourth Affirmative Defenses should be stricken.

## DEFENDANT'S FIFTH AFFIRMATIVE DEFENSE

Defendant states that its Fifth Affirmative Defense "does more than deny paragraph 14 of Plaintiff's Complaint" wherein Plaintiff alleges that the requested modifications are readily achievable and technically feasible but it does not state what more it does. See Defendant's Response Brief (D.E. #12, page 3).

2

Defendant also argues that "the real substance of the Defendant's Fifth Affirmative Defense is that the Plaintiff is holding the Defendant to the standard of full compliance with all ADA regulations (the standard applied to buildings constructed after enactment of the Act) rather than holding it to the lesser standard applied to buildings constructed before the passage of the Act (such as the Defendant's building)." However, this is incorrect. Plaintiff is not holding Defendant to any improper standards. The opposite is true. Plaintiff alleges in paragraph 14 of his Complaint:

"14. The removal of the physical barriers, dangerous conditions and ADA violations set forth herein is readily achievable and is technically feasible. 42 U.S.C. § 12182(b)(2)(A)(iv) and 42 U.S.C. §12183(a)(2)."

As stated in Plaintiff's motion, ready achievability is the standard applicable to buildings constructed prior to 1993 and unaltered since then and technical feasibility is the standard that applies to post 1993 alterations to pre-1993 constructed buildings. Defendant disagrees with this allegation and has therefore denied it in its Answer. Alleging it again as a redundant affirmative defense does nothing and should not be allowed. At the very least, as Plaintiff stated in his motion and as Defendant concedes in its Response Brief (D.E. 12), if Defendant believes certain modifications are not readily achievable and/or technically feasible, it should, at the very least, identify those violations and state why they cannot be completed.

As Defendant concedes, if the Court does not strike this defense, it should, at the very least, treat it as a denial. See Defendant's Response Brief (D.E. #12, page 4).

### **DEFENDANT'S SIXTH, SEVENTH AND EIGHTH AFFIRMATIVE DEFENSES**

Defendant supports its Sixth, Seventh and Eighth Affirmative Defenses by maintaining that lack of standing is a valid affirmative defense. Defendant argues that Plaintiff's reliance upon and Judge Ryskamp's reliance upon *In Re Ackerman*, 247 B.R. 336, 339 (M.D. Fla. 2000) in other Orders on motions to strike lack of standing affirmative defenses in other district court

cases for the proposition that lack of standing is not an affirmative defense in the federal practice is misplaced. Defendant states that *In Re Ackerman* "struck the affirmative defense on the grounds that standing had been established, not on the grounds that standing is not a valid affirmative defense." See Defendant's Response Brief (D.E. #12, page 5). However, Defendant is wrong. The Court in *In Re Ackerman*, held on page 339 of the Opinion:

**"Before considering the merits of this affirmative defense, it is well to note that lack of standing is not an affirmative defense in the federal practice. Fed. R. Civ. Pro. 8, as adopted by F.R.B.P. 7008, specifically sets forth the affirmative defenses and lack of standing is not one of them."**

Defendant also cites to *Marley v. Jetshares Only, LLC*, 2011 WL 2607095 (S.D. Fla.) in support of its argument that a defendant may raise lack of standing as an affirmative defense. However, Defendant's reliance on *Marley* is misplaced. In *Marley*, the Plaintiff argued in his motion to strike defendant's lack of standing affirmative defense that defendant asserted an incorrect basis for asserting a lack of standing defense and the Court disagreed. The Court, in *Marley*, did not confront the issue of whether lack of standing should be properly raised as an affirmative defense at all.

Defendant also cites to *American Home Assurance Company v. Weaver Aggregate Transport, Inc.*, 2011 WL 4346576 (M.D. Fla.) for the proposition that lack of standing may be asserted as an affirmative defense. Defendant's reliance on *American Home Assurance Company* is misplaced. This case dealt with the defendant being able to continue to plead and prove that plaintiff lacked an injury-in-fact after its 12(b)(6) motion to dismiss on those grounds was denied. Like *Marley, American Home Assurance Company* did not confront the issue of whether lack of standing should be properly raised as an affirmative defense in the federal practice.

In addition, contrary to the plaintiffs in *Marley* and in *American Home Assurance Company*, Mr. Ramnarine, here, asserts that he will suffer prejudice from dealing with these

4

insufficient defenses, as opposed to spending time and money litigating issues that would affect the outcome of the case. This is prejudicial in the truest sense.

Defendant argues its lack of standing to complain about barriers not actually encountered defense is proper because "it is well established...that a plaintiff in an Article III ADA case only has standing to bring claims for barriers that affect him specifically, and lacks standing to complain about violations on behalf of all disabled individuals". Plaintiff agrees with Defendant on this point but this does not substantiate the legitimacy of Defendant's lack of standing to complain about barriers not actually encountered defense. This is so because even if this could be asserted as an affirmative defense, it would be irrelevant to Plaintiff's claims because Plaintiff does not seek barrier removal relating to a disability other than the one he suffers from, i.e., the inability to walk due to spinal cancer. See Plaintiff's Complaint, (D.E. #1, paragraphs 1, 9, 11, 12, 13 and 15 wherein Plaintiff repeatedly references the need to remediate ADA violations "relevant to his disability" or "because of his disability" or "due to his disability."

To exemplify its point, Defendant improperly attacks Plaintiff's request for an injunction to remedy the ADA violations relating to Standard 216 stating that this Standard protects blind individuals and Plaintiff does not allege that he is blind. However, even a cursory review of Standard 216 and its corresponding sections will reveal that they do not only protect blind individuals, but also protect mobility disabled individuals such as Plaintiff because they dictate the requirements for signs in general beyond the need for Braille lettering such as whether the characters have to be upper case or lower case, the font of characters, character proportions, character heights, character stroke thickness, character spacing, line spacing, sign location, sign finish and contrast, character style and symbols of accessibility.

As a result, none of Defendant's contentions regarding the viability of its lack of standing defenses have merit and therefore, Defendant's Sixth, Seventh and Eighth Affirmative Defenses should be stricken.

## DEFENDANT'S NINTH AFFIRMATIVE DEFENSE

Defendant contends that its Ninth Affirmative Defense, "Plaintiff has failed to allege that the removal of barriers he seeks is readily achievable.", is not merely a denial even though Defendant denies paragraph 14 of Plaintiff's Complaint, which states:

"14.   The removal of the physical barriers, dangerous conditions and ADA violations set forth herein is readily achievable and is technically feasible. 42 U.S.C. § 12182(b)(2)(A)(iv) and 42 U.S.C. §12183(a)(2)."

In support of this argument, Defendant cites to *Colo. Cross Disability Coal.s v. Hermanson Family Ltd.,* 264 F.3d 999, 1002 (10th Cir. 2001) and *Access Now, Inc. v. South Florida Stadium Co.*, 161 F.Supp.2d 1357, 1369 (S.D. Fla. 2001) for the proposition that where a disabled plaintiff requests the removal of barriers, he must do more than submit a one paragraph expert opinion concluding the removal of the barriers could be accomplished easily and without much difficulty or expense and that here, Plaintiff has even done less in that he has only asserted that the barrier removal is readily achievable.

Defendant's argument is unavailing. First, it fails to acknowledge that *Access Now, Inc. v. South Florida Stadium Co.* was decided within the context of a motion for summary judgment where Plaintiff had, but did not meet, its burden of proof and *Colo. Cross Disability Coal.s v. Hermanson Family Ltd* was decided within the context of a motion for judgment as a matter of law at the close of Plaintiff's case at trial wherein Plaintiff was required to, but did not, meet its burden of proof. Here, Defendant's arguments are simply inapplicable in the context of a Complaint and affirmative defenses pled in response to that Complaint wherein Plaintiff's allegations must be accepted as true and wherein Plaintiff is not required to, at this stage of the

6

litigation, meet any burden of proof. Despite Defendant's contention to the contrary, Plaintiff is not now required to present evidence to support the allegations in his Complaint.

## DEFENDANT'S TENTH AFFIRMATIVE DEFENSE

Defendant supports its Tenth Affirmative Defense by stating that it is not merely a denial of paragraph 14 of Plaintiff's Complaint but "asserts a fact not in Plaintiff's Complaint, the fact that the defendant's facilities were built prior to the effective date of the ADA, and thus, are not subject to the ADA regulations which Plaintiff claims the Defendant is subject to."

Again, Defendant is wrong. By plaintiff stating in paragraph 14 that the modifications sought are readily achievable and are technically feasible, he is stating that the "readily achievable" standard applies to Defendant's facility because the facility was constructed before 1992 to the extent it has not been altered since 1992 and the "technical feasibility" standard applies, to the extent the facility was altered after 1992. If Plaintiff did not maintain that Defendant's facility was altered after 1992, it would not have alleged in paragraph 14 that the modifications sought were technically feasible - the standard specifically applicable to pre-1992 facilities that were altered after 1992. If Plaintiff maintained that Defendant's facility was built after 1992, it would have alleged that the modifications sought were structurally practicable - the standard applicable to facilities constructed after 1992. It did not. At this point, until discovery is completed, Plaintiff has no way of knowing what parts of the property have been altered since 1992 so both standards were referenced.

Defendant also disagrees with Plaintiff's contention that its Tenth Affirmative Defense is improper because a pre 1992 facility that was altered after 1992 must comply with the ADA standards. However, as stated in Plaintiff's Motion To Strike, if a pre-1992 facility was altered after 1992, the facility's owner is required to make those altered portions of the facility readily accessible to and usable by individuals with disabilities to the "maximum extent feasible" which

7

mandates accessibility unless the nature of the facility being altered makes it virtually impossible to comply. 42 U.S.C. §12183(a)(2).

## DEFENDANT'S ELEVENTH AFFIRMATIVE DEFENSE

Defendant's Eleventh Affirmative Defense states, "To the extent Defendant did not design, construct, build or modify the architectural barriers complained of by Plaintiff or install or create any such barriers, R G Group is required only to "remove architectural barriers, and communication barriers that are structural in nature, in existing facilities…where such removal is readily achievable. 42 U.S.C. §12182(b)(2). See, e.g., *Rodriguez v. Investco, LLC*, 305 F.Supp.2d 1278 (M.D. Fla. 2004)."

Defendant supports this redundant defense by arguing that "The Defendant's Eleventh Affirmative Defense is not a denial of paragraph 14 of Plaintiff's Complaint, as Plaintiff asserts, but a statement of Defendant's right to assert as a defense that, where the Defendant did not design, construct, build or modify an architectural barrier complained of by Plaintiff after the 1992 benchmark date for ADA regulation, the Defendant is only required to remove such barriers where removal is readily achievable…" See Defendant's Response Brief, (D.E. #12, page 9).

Plaintiff agrees with the above quoted portion of Defendant's Response Brief. However, what Defendant has stated in its Response Brief is not what it has stated as its Eleventh Affirmative Defense. Defendant's Eleventh Affirmative Defense does not qualify its applicability to whether Defendant made alterations to the facility before 1992 date but makes an incorrect general blanket statement that if the Defendant did not ever design, construct, build or modify the architectural barriers complained of by Plaintiff or install or create any such barriers, it is required only to remove architectural barriers, and communication barriers that are structural in nature, in existing facilities…where such removal is readily achievable. This is wrong. As

stated in Plaintiff's Motion To Strike and as stated above in support of striking Defendant's Tenth Affirmative Defense, if a pre-1992 facility was altered after 1992, the facility's owner is required to make those altered portions of the facility readily accessible to and usable by individuals with disabilities to the "maximum extent feasible" which mandates accessibility unless the nature of the facility being altered makes it virtually impossible to comply. 42 U.S.C. §12183(a)(2).

## DEFENDANT'S TWELFTH AFFIRMATIVE DEFENSE

Defendant continues its position that removal of barriers and plans to remove barriers prevent Plaintiff from recovering his attorneys' fees. Plaintiff agrees that if Defendant removed all mobility related barriers from its facility before a judgment was entered against it mandating such removal, Plaintiff may not, under certain circumstances, be entitled to recover his attorneys' fees; but this is not what Defendant's Twelfth Affirmative Defense alleges. What Defendant alleges as its Twelfth Affirmative Defense is that its plan to and its continuing process of removing barriers prevents Plaintiff from recovering his attorneys' fees. This wrong. Defendant planning to or even engaging in barrier removal does not prevent Plaintiff from recovering his attorneys' fees.

## DEFENDANT'S THIRTEENTH AFFIRMATIVE DEFENSE

Defendant attempts to justify its Thirteenth Affirmative Defense by arguing that because Plaintiff has not specifically alleged what physical barriers he seeks to have Defendant remove, it cannot be ascertained whether the requested removal is readily achievable and therefore Defendant challenges the feasibility of any specific request for the removal of physical barriers that Plaintiff may make in the future. See Defendant's Response Brief, (D.E. #12, page 11). This is not true. Plaintiff is not reserving the right to add additional claims. Plaintiff's claim seeks the removal of all barriers at Defendant's facility relevant to his specified disabilities. Plaintiff requires a Rule 34 inspection to determine the specifics of all of the ADA violations at

Defendant's facility relevant to Plaintiff's disabilities because Plaintiff does not know, and could not know, of the specifics of all of Defendant's ADA violations relevant to Plaintiff's disabilities, encountered and/or known by Plaintiff, due to Plaintiff's lack of access which is itself due to the ADA violations at Defendant's facility. Identifying additional details relating to such barriers at Defendant's facility through a Rule 34 inspection is not adding a claim. The claim is the same. Plaintiff simply cannot now tell, due to Defendant violating the ADA, the full scope of the claim. See *Advocates for the Disabled, Inc. v. Subway 1674, Inc.*, Case No. 00-7439-CIV-HURLEY/SNOW, DE # 29 (S.D. Fla. Jan. 17, 2001) (relying on *Steger* to permit inspection of public portions of premises to document any ADA violation related to plaintiffs' disabilities, noting that additional ADA violations would not involve new "claims").

Since it owns and operates its restaurant, Defendant, "presumably, has reasonable access to its own facilities to determine which, if any, are noncompliant." See *Lugo v. BRP Properties*, Case No. 11-81155-CV-HURLEY/HOPKINS (S.D. Fla. December 22, 2011). Defendant need not wait for Plaintiff's expert to issue a report to learn of the violations at its property.

In addition, even if lack of ready achievability was an affirmative defense and not merely a redundant denial of paragraph 14 of Plaintiff's Complaint and other defenses, Defendant would have to, at least generally, allege why or how remediation is not readily achievable or technically feasible, which it does not do, and what alternative methods it has employed or will employ in its stead.

## DEFENDANT'S DEMAND FOR ATTORNEYS' FEES

Defendant did not respond to Plaintiff's motion to strike its demand for attorneys' fees contained in its Wherefore clause. Plaintiff respectfully requests that this Court strike this demand for the reasons stated in its Motion To Strike at page 14.

## CONCLUSION

For each of the foregoing reasons, Plaintiff's Motions should be granted.

WHEREFORE, Plaintiff David Ramnarine respectfully requests that this Court enter an Order striking Defendant RG Group, Inc.'s Second through Sixteenth Affirmative Defenses and its demand for attorneys' fees and for such other relief as this court deems proper and appropriate.

s/Drew Levitt
DREW LEVITT, ESQ.
E-mail: dml2@bellsouth.net
Florida Bar No: 782246
LEE D. SARKIN, ESQ.
E-mail: lsarkin@aol.com
Florida Bar No. 962848
Attorneys for Plaintiff
4700 N.W. Boca Raton Blvd.
Suite 302
Boca Raton, Florida 33431
Telephone (561) 994-6922
Facsimile (561) 994-0837

## **CERTIFICATE OF SERVICE**

      I hereby certify that on June 22, 2012, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the forgoing document is being served this day on all counsel of record or pro se parties identified on the Service List below in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically, Notices of Electronic Filing.

                                              s/Lee D. Sarkin
                                              LEE D. SARKIN, ESQ.

## SERVICE LIST

### David Ramnarine v. R G Group, Inc.

### CASE NO. 12-80264-CIV-MARRA/BRANNON
### United States District Court Southern District of Florida

Mark R. Boyd, Esq.
E-mail: mboyd@dldlawyers.com
DeMahy Labrador Drake et al.
Attorneys for RG Group, Inc.
6400 North Andrews Avenue
Suite 500
Fort Lauderdale, Florida 33309
Telephone (954) 229-9951
Facsimile  (954) 229-9778
Via CM/ECF